BRENNAN, J.
¶ 1 Devon L. Loggins appeals a judgment of conviction, entered on a jury verdict, for one count of being a felon in possession of a firearm and multiple counts of first-degree reckless homicide and first-degree reckless endangerment. The charges were in connection with an incident in which Loggins killed two men and injured others when he armed himself and repeatedly fired into a group of people who had been in a fistfight.
¶ 2 Loggins seeks a new trial on the grounds that the trial court erred when it denied his request for a jury instruction on self-defense. He argues that the trial court wrongly denied his request because there was "some evidence"-and that is all that is required-that the three elements for the instruction were satisfied: (1) that he believed that there was an actual or imminent unlawful interference with his person; (2) that he believed that the amount of force he used was necessary to prevent or terminate the interference; and (3) that his beliefs were reasonable. See State v. Stietz , 2017 WI 58, ¶¶ 11, 16, 375 Wis. 2d 572, 895 N.W.2d 796 (to be entitled to a jury instruction on the privilege, "[t]he accused need produce only 'some evidence' in support of the privilege of self-defense").
¶ 3 At the moment when Loggins armed himself and "just started pulling the trigger"-firing fifteen times-he had been involved in a street brawl between two groups of people. The question in this case is whether it was reasonable for Loggins to believe, at the moment he started shooting, that using deadly force was "necessary to prevent imminent death or great bodily harm to himself[.]" WIS. STAT . § 939.48(1) (2015-16).[1] As we explain below, Loggins did not satisfy his burden to produce "some evidence" that this was a reasonable belief. The evidence was not sufficient because no reasonable fact-finder could have determined that Loggins reasonably believed that the deadly force he used was necessary. See Stietz , 375 Wis. 2d 572, ¶ 6. The trial court properly denied his request for the self-defense jury instruction.[2] We therefore affirm.
BACKGROUND
The people involved and the events leading up to the shooting.
¶ 4 In the early morning hours of May 1, 2015, a conflict between members of two extended families-the Loggins family and the Jones family-escalated into a violent melee involving at least twenty people. The two families were connected because Nessie Loggins and Larry Jones, Jr., had been in a romantic relationship for about ten years.[3] The May 1 incident was sparked by a fight between the defendant, who is Nessie's son, and Damario Jones, who is Larry's son. It ended with Loggins shooting into the group of Damario's friends, leaving two dead and three wounded.
¶ 5 The incident started when Damario confronted Loggins over an altercation Loggins had had earlier in the day with Damario's father. The two got into a fistfight that, according to witness accounts, lasted about five minutes.
Loggins' account of the circumstances surrounding his use of deadly force.
¶ 6 The accounts of what happened next are not consistent.[4] For purposes of our analysis, we focus on the encounter from Loggins' perspective. See Stietz , 375 Wis. 2d 572, ¶ 22.
¶ 7 Loggins testified on direct examination that after someone knocked on the door, he came outside of the house and found that Damario and at least twenty people had come inside the duplex's fenced yard. Loggins testified that Damario then "jump[ed] in front of all of them and [swung] on" him and started yelling. Loggins testified that he hit Damario three times, Damario fell, and people who were with Damario then jumped Loggins, and he "started fighting all of them." He testified that at that point a "tall dude" yelled for everyone to stop, and "everybody stop[ped] swinging on [him]."
¶ 8 Loggins testified as follows about what happened after the "tall dude" intervened:
And when everybody stop swinging, the same dude that told everybody to stop ... swinging, he snaked me. He punched me .... I got to like stumbling towards the side. Another dude punched me.... There was another dude in a gray hoodie. He had a gray sweat shirt on. He was directly in front of me. He swung on me. When he swung on me, I seen his punch coming so, I like duck. When I duck, that's when I noticed the gun fall from under his hoodie. As soon as it hit the ground, I grabbed it. When I grabbed it, that's when you hear somebody yelling, "He got a gun. He got a gun. He got a gun." As I'm coming up, like somebody tried to kick me. They kicked me right here on the side. When they kicked me, that's when I just started pulling the trigger.
....
I was just pulling the trigger. Like I was scared, you know what I'm saying. My intentions was to just get these people up off of me, get them away from me.
¶ 9 At a later point in his testimony, he repeated that when the initial fistfight had been stopped, he had been punched by three men: the "tall dude," a second man who was on one side, and the man directly in front of him wearing the gray hoodie. Loggins repeated that someone had seen him grab the gun that fell from the hoodie and had started yelling that he had a gun. He repeated that someone had kicked him. He added, "I think they was trying to kick me like in my arm because this the hand that I had the gun in. But they missed. They hit me right here. When they kicked me, I kind of like turned over. I just started pulling the trigger."
¶ 10 On cross-examination, Loggins testified that at the point when he armed himself with the gun, he had seen "no other gun." He agreed with the prosecutor's statement that the gun's owner did not have the gun out during the fight and that no gun had been pointed at him. He testified that his injuries were bruises on his face, a bruise on his ribs, and he had missing hair. The prosecutor asked Loggins, "You just picked up a gun, you are saying you found on the ground, and you just started shooting not caring where it went, correct?" Loggins answered, "I wouldn't say it like that but-." The prosecutor repeated the question a moment later, "You just started shooting, didn't you?" and Loggins answered, "I just started shooting, yes."
Jury instructions, jury verdict, and postconviction motion.
¶ 11 The trial court denied Loggins' request to give the self-defense jury instruction. It stated that self-defense was not statutorily available for the two homicide charges. As to the reckless endangerment charges, it concluded that even viewing the evidence in the light most favorable to Loggins, no evidence supported a reasonable belief of "great bodily harm or death ... from any of the melee that went on."
¶ 12 The jury convicted Loggins on all six counts. The trial court imposed a sentence of a total of fifty-five years in prison and twenty-six years of extended supervision, consisting of a thirty-year sentence for each homicide count and a seven-year sentence for each reckless endangerment count, all bifurcated and served consecutively. It imposed a two-year bifurcated sentence for the felon in possession count and ordered that it run concurrent to the other sentences.
¶ 13 Loggins filed a motion for postconviction relief, seeking correction of the record as to incomplete polling of the jury and also seeking relief from the judgment. The postconviction court granted the relief requested as to the amended record, which is not relevant to this appeal, and denied relief from the judgment.
DISCUSSION
I. Standard of review and governing principles.
¶ 14 The privilege of self-defense is set forth in WIS. STAT . § 939.48(1) as follows:
A person is privileged to ... intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force ... as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.
(Emphasis added.)
¶ 15 The pattern jury instruction for self-defense, WIS JI-CRIMINAL 800, instructs the jury on the elements of self-defense as follows:
Self-defense is an issue in this case. The law of self-defense allows the defendant to threaten or intentionally use force against another only if:
• the defendant believed that there was an actual or imminent unlawful interference with the defendant's person; and,
• the defendant believed that the amount of force the defendant used or threatened to use was necessary to prevent or terminate the interference; and
• the defendant's beliefs were reasonable.
Determining Whether Beliefs Were Reasonable
A belief may be reasonable even though mistaken. In determining whether the defendant's beliefs were reasonable, the standard is what a person of ordinary intelligence and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense. The reasonableness of the defendant's beliefs must be determined from the standpoint of the defendant at the time of the defendant's acts and not from the viewpoint of the jury now.
(Footnotes omitted.)
¶ 16 A court "must determine whether a reasonable construction of the evidence will support the defendant's theory 'viewed in the most favorable light it will "reasonably admit of from the standpoint of the accused." ' " State v. Head , 2002 WI 99, ¶ 113, 255 Wis. 2d 194, 648 N.W.2d 413 (citations omitted).
¶ 17 Whether there are sufficient facts to warrant the trial court's instructing the jury on self-defense is a question of law that this court decides independently of the trial court but benefits from its analysis. Id. , ¶ 44.
¶ 18 A trial court may deny a defendant's request for a self-defense instruction "when no reasonable basis exists for the defendant's belief that another person was unlawfully interfering with his person and that the defendant used or threatened the use of such force as he reasonably believed necessary to prevent or terminate the interference." Stietz , 375 Wis. 2d 572, ¶ 15 (emphasis added).
¶ 19 Wisconsin law establishes a "low bar" for an accused who seeks a jury instruction on the privilege of self-defense. State v. Schmidt , 2012 WI App 113, ¶ 12, 344 Wis. 2d 336, 824 N.W.2d 839. The accused need produce only "some evidence" in support of the privilege of self-defense. Head , 255 Wis. 2d 194, ¶ 112. "We focus on the encounter from the defendant's perspective." Stietz , 375 Wis. 2d 572, ¶ 22. "We view the record favorably to the defendant ... to assess whether a reasonable jury could find that a person in the position of the defendant under the circumstances existing at the time of the incident could reasonably believe that he was exercising the privilege of self-defense." Id.
II. Even if Loggins had a belief that deadly force was necessary to prevent imminent death or great bodily harm to himself, there is no evidence that his belief was reasonable.
¶ 20 Loggins argues that viewed in the light most favorable to him, there was "some evidence" that supported a reasonable belief that the force he used was necessary. He argues that "a reasonable view of the evidence" supports his claim "that he was defending himself against a large number of people attacking him." He argues that the evidence, viewed in a favorable light, supports the conclusion that "a number of Mr. Jones' partisans intervened on Mr. Jones' behalf and physically attacked Mr. Loggins. At this point, outnumbered being beaten, Mr. Loggins produced or obtained a gun and started shooting at the persons attacking him."
¶ 21 The problem with Loggins' argument is that it fails entirely to address the requirement that the force used be "only such force ... as the actor reasonably believes is necessary to prevent or terminate the interference." See WIS. STAT . § 939.48(1) (emphasis added). As to the deadly force Loggins used, the statute prohibits self-defense by "force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself." See id. (emphasis added).
¶ 22 The State concedes that under statute and case law, Loggins "may have reasonably believed that he needed to threaten deadly force to end the attack." (Emphasis added.) It cites to State v. Watkins , 2002 WI 101, ¶ 55, 255 Wis. 2d 265, 647 N.W.2d 244, for the proposition that an accused who threatened to use deadly force may be entitled to a self-defense instruction with a lesser showing than would be needed if he had in fact used deadly force. But it argues that "[n]othing in Loggins' version of events evinced a belief that his attackers were threatening him with imminent death or great bodily harm."
¶ 23 Loggins' testimony was that he had been hit and kicked prior to picking up the gun. At the point when he armed himself with the gun, he testified, he was kicked by someone who missed while aiming for his arm, possibly with the intention of kicking the gun out of his hand. The only threat Loggins has testified that he faced after he picked up the gun was a person, apparently unarmed, who kicked his arm.
¶ 24 The question is whether it was reasonable for Loggins to believe that the deadly force he used was necessary to stop imminent death or great bodily harm. Loggins' burden was to produce "some evidence" that his belief was reasonable. There is no evidence that Loggins was threatened with imminent death or great bodily harm at the moment when he armed himself. His decision to shoot indiscriminately fifteen times therefore was not based on a reasonable belief that it was necessary. The trial court did not err in denying his request for the self-defense instruction.
By the Court. -Judgment affirmed.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

We conclude that Loggins failed to meet his evidentiary burden that he reasonably believed that the deadly force he used was necessary to meet the threat he faced. It is therefore not necessary for us to address the State's alternative argument that the privilege of self-defense was not available to Loggins as to the two reckless homicide charges under the plain language of Wis. Stat. § 939.48(3) (privilege does not apply to harm inflicted on third parties where harm inflicted amounts to reckless homicide). See Gross v. Hoffman , 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

The families were also connected by the relationship between Damario Jones (who is Larry's son) and Ladonna (who is Nessie's daughter and Devon's sister). The family members' relationships have no bearing on the analysis.

Damario Jones was fatally shot three times in the chest and extremities. Montrell Burdine was fatally shot once in the thigh, and before he died he identified Loggins as the shooter. Three men were also injured in the shooting, and two of them testified at trial that Loggins was the shooter. This was supported by the statements and the testimony of several other witnesses. Some witnesses testified that they saw no one with a gun other than Loggins. Loggins said he picked the gun up off of the ground. Some witnesses stated that they saw Loggins retrieve the gun from his car after the initial fight ended.
One of the bullets the medical examiner removed from Damario's body was a .357 caliber-not a nine-millimeter like the shells found at the scene. The State's expert testified that these bullets could not have been fired from the same gun. Some witnesses testified that they saw Loggins' half-brother Mario Granville shooting both victims while they were on the ground. The Milwaukee Police Department's ShotSpotter detected gunfire in the area during the time of the incident. This data showed that fifteen rounds were fired over the course of eight seconds, followed forty seconds later by a single round.